**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KALISA GOLDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07 C 6928 |
| | ) |
| CITY OF CHICAGO, and UNIDENTIFIED | ) Judge Rebecca R. Pallmeyer |
| CHICAGO POLICE OFFICERS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On November 2, 2007, Plaintiff Kalisa Golden, a Chicago resident, was detained by Defendants, Chicago Police Officers James Brill and Silvana Giannini, following a traffic stop. Plaintiff alleged (1) that Brill unlawfully seized and arrested her in violation of her Fourth Amendment rights; (2) that Giannini failed to intervene to prevent the unlawful seizure, (3) that Brill used excessive force in violation of her Fourth Amendment rights; and (4) that Giannini failed to intervene to prevent Brill's use of excessive force. Following a four-day trial, the jury returned a verdict in favor of Plaintiff on her unlawful arrest claim against Officer Brill, but awarded no damages on that claim and ruled in favor of Defendants on all other claims. (Doc. 110.) Defendant Brill has moved to alter the verdict on the unlawful arrest and seizure claim, and Plaintiff seeks a new trial on damages. For the reasons stated here, both motions are denied.

## FACTS

The facts, drawn from the trial record and stipulations and recounted in a light favorable to the jury's verdict, are as follows. On November 2, 2007, Plaintiff Kalisa Golden was driving southbound on Wabash Avenue in her Nissan Sentra. At the time of the incident, southbound traffic on Wabash Avenue crossing 21st Street was not subject to any traffic control device such as a stop sign or traffic light. In contrast, traffic heading eastbound on 21st Street at the juncture of Wabash Avenue was controlled by a stop sign. As Plaintiff's car approached the intersection, Officer Brill

was driving an unmarked maroon police car eastbound on 21st Street with Officer Giannini, his partner, in the passenger seat. Plaintiff testified that she was not speeding and was complying with all traffic rules, but the maroon sedan ran through a stop sign, forcing her to slam on her brakes to avoid a collision. According to Plaintiff, both she and Officer Brill were required to take evasive measures to avoid an accident, and she used her horn, shouted, and gestured at Brill, not realizing that he was a police officer.

There was no collision, but Brill activated flashing police lights and pulled Golden over. He approached the driver's window and asked for Golden's license and registration. Golden testified that she responded by asking why she had been pulled over and then told the officer that she was "driving on a ticket," meaning she did not have a license, but instead was carrying a traffic citation, indicating that she was legally allowed to drive. Golden claims Officer Brill did not ask to see the ticket, but instead immediately asked her to step out of the vehicle. Brill testified, however, that Golden never mentioned the ticket and instead refused his repeated requests for her name. It was only after several minutes, he attested, that he directed her to step out of her car.

Both parties agree that, once Plaintiff exited the car, Officer Brill handcuffed her, placed her in the rear of the police car, and drove her to the Chicago police station located near the intersection of 18th Street and Michigan Avenue, while Officer Giannini followed behind driving Golden's Nissan. At the police station, Giannini handcuffed Golden to a bench in the processing area and Brill asked for information which he used to verify Golden's identity. Upon establishing her identity, Brill released Golden from custody. No ticket or traffic citation was issued, nor was Plaintiff charged with any crime in connection with the events relevant to this trial. The entire episode lasted approximately forty-five minutes to one hour.

The jury heard conflicting testimony about the nature of the interaction between Golden and Brill. Golden testified that Brill was visibly upset when he approached her car, immediately demanding that she exit the vehicle, and that he used excessive force by twisting her arm behind

2

her back, forcing her to bend over against the trunk of her car, and fastening handcuffs tightly on her wrists, causing significant pain. Corey Miller, a valet for Quattro Restaurant, located on 21st and Wabash, witnessed the incident and testified that Brill ran the stop sign on 21st and that both Brill and Golden had to slam on their brakes to avoid a collision. Miller further testified that he saw Brill "handling the female pretty roughly," and using "overpowering" force, and that Golden made no attempt to resist.

Officer Brill gave somewhat conflicting testimony about his reasons for pulling Golden over, but insisted that he did not run the stop sign, did not exit his car in a rage, and did not use any unnecessary force on Golden. Brill testified that he came to a complete stop at the intersection of 21st and Wabash and then inched his car out so that he could see oncoming traffic. From that vantage point, Brill claimed to have observed Plaintiff's car traveling southbound on Wabash for approximately 100-150 feet at an estimated 40-45 miles per hour. Brill acknowledged that his patrol car was not equipped with a radar detector and that he had not paced Golden's car to gauge her speed. He nevertheless pulled Golden over because, he explained, "she was coming southbound to Wabash and she was laying on her horn. She stopped in front of us and began yelling something at us. We had our windows up. We had no idea what she was yelling about. So we flipped on our lights, and she pulled over to the side of the road." (Tr. 175.) In fact, however, the officers' contact card for the incident indicated that Golden was pulled over for speeding; the card makes no mention of Golden's having honked, yelled, or otherwise signaled at the officers.[1]

Brill testified that Golden was immediately uncooperative—that she refused to answer his repeated requests for her to provide her name, license, and registration—and that he asked her to step out of the vehicle and eventually detained her because of her failure to provide information.

---

[1] The Chicago Police Department uses various means, including contact cards, to track the performance of its officers through statistics. Police officers complete contact cards each time that they make contact with a citizen; the card describes the reason for the initial contact and the nature of the interaction.

3

He testified that she was apologetic and cooperative once they reached the police station and that as soon as her identity was verified, Golden was released.

Upon being released, Golden went to a friend's home for the remainder of the evening; she did not seek treatment until the next day, November 3, 2007, when she went to the Mercy Hospital emergency room and complained of soreness and swelling on her wrist. Plaintiff acknowledged that she did not have marks or scratches from the handcuffs and also acknowledged a preexisting wrist condition. Specifically, in August 2007, Golden had been diagnosed as suffering from tendinitis. She was encouraged at that time to treat her wrist with ice, Ibuprofen, and an Ace bandage for support. Golden acknowledged that the symptoms she experienced on November 3–soreness and swelling–were the same symptoms, in the same place, as those she had suffered in August. She acknowledged, further, that she had not adhered to the treatment recommendations she received in August and had not completed a recommended follow-up examination.

## **DISCUSSION**

As noted earlier, the jury found in favor of Plaintiff and against Officer Brill on the false arrest claim, but awarded no damages. On all other claims, the jury's verdict was in favor of Defendants. Both Plaintiff and Defendant Brill seek relief from the judgment on the jury's verdict. Officer Brill asserts that the verdict against him is not supported by the evidence, and Plaintiff argues that she is entitled to a new trial and to an award of damages. The court addresses these motions in turn.

**Defense's Motion for Altered Verdict**

Defendant moves pursuant to FED. R. CIV. P. 59 to alter the verdict against Officer Brill to a judgment in his favor and a finding of not guilty. Defendant argues that the jury erred in finding that Officer Brill unlawfully seized and arrested the Plaintiff. The court disagrees. Defendant Brill invokes FED. R. CIV. P. 59(e), which allows the court to alter a judgment when there has been a mistake of fact or law or if new evidence has come to light. His argument, however, makes no

4

mention of new evidence or of any mistakes of fact; instead, Brill contends that the "undisputed facts at trial" required a verdict in his favor. In arguing that he is entitled to a judgment in his favor or a new trial on this basis, Defendant faces a heavy burden. *Smith v. Northeastern Illinois Univ.*, 388 F. 3d 559, 569 (7th Cir. 2004). A verdict will be set aside as contrary to the manifest weight of the evidence only if "no rational jury" could have rendered the verdict. *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006). Jury verdicts deserve particular deference in cases with "simple issues but highly disputed facts." *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008), citing *Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995).

The court concludes there was a reasonable basis for the jury's verdict in this case. Contrary to Defendant's suggestion that certain facts were undisputed, there was in fact substantially conflicting testimony regarding the relevant events, particularly those leading up to Officer Brill's pulling the Plaintiff over and ultimately handcuffing her. Brill testified that Golden was speeding, which would have made the initial traffic stop valid at its inception under the principles established in *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). Golden testified, however, that her speed was somewhere between 30 and 35 miles per hour, but she also repeatedly insisted that she was not in fact speeding, and that Officer Brill's own conduct caused the near-collision. Plaintiff's speed was very much in dispute; and what is undisputed is that Brill did not have a radar speed detector in his patrol car, nor had he paced Golden's car to gauge her speed.

Similarly, the jury heard conflicting testimony about the circumstances of Golden's arrest. Brill testified that he detained Golden for her failure to comply with his request for identification. Golden testified that she was never given the chance to produce any identification before she was placed under arrest. Where one witness's testimony conflicts with another's, the court is not free to make its own credibility determination. Instead, it is the jury's duty to weigh conflicting testimony, determine credibility and draw factual inferences, and the court will not revisit or overturn

5

their factual determination without clear error.  *Joyce v. Chicago Park Dist.*, 483 F. Supp. 2d 678, 686 (N.D. Ill. 2007).  Defendant's motion is therefore denied.

**Plaintiff's Motion for New Trial**

Plaintiff moves for a new trial on damages for three reasons. First, Plaintiff argues that the zero damage award is against the manifest weight of the evidence and should be vacated. (Plaintiff's Memo [122], p. 4.)  Second, Plaintiff asserts that the jury award was poisoned by defense counsel's inflammatory remarks to the jury about the source of any judgment—namely, that any compensatory award would be paid by public tax dollars.  *Id.* at 6.  Finally, Plaintiff asserts that defense counsel's closing remarks were improper and prejudicial.  *Id.* at 9.

When considering a motion for a new trial pursuant to FED. R. CIV .P 59(a), the court must determine whether the verdict is against the weight of the evidence, the damages are excessive, or, for other reasons, the trial was not fair to the party moving.  *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004).  Again, the party moving to set aside a verdict faces a substantial challenge. The court is required to give significant deference to the jury's verdict and to limit its inquiry to whether the award is "monstrously excessive," whether there is any rational connection between the award and the evidence, and whether the award is roughly comparable to those made in similar cases.  *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 566 (7th. Cir. 2006).  In the context of a plaintiff's contention that a jury verdict is too low, the issue is essentially whether "the record is capable of supporting the jury's verdict, even if some would interpret that evidence differently."  *Blumenfeld v. Stuppi,* 921 F.2d 116, 118 (7th Cir. 1990).  Typically, a reviewing court will not order a new trial on damages "merely because [it believes] the jury's award was too low .  The assessment of damages is particularly within the province of the jury as the trier of fact."  *Id., quoting Fenolio v. Smith*, 802 F.2d 256, 259 (7th Cir. 1986).

Plaintiff cites several cases that suggest compensatory damages are the norm when a jury determines that a 42 U.S.C. §1983 violation has occurred.  *See Carey v. Piphus*, 435 U.S. 247,

254-55 (1978); *Lopez v. City of Chicago*, 464 F.3d 711, 722 (7th Cir. 2006); *Crawford v. Garnier*, 719 F.2d 1317, 1324 (7th Cir. 1983). The fact that a compensatory award is the norm does not, of course, make it mandatory. The jury was entitled to award Plaintiff the amount it deemed necessary to compensate her for her injuries. There was a reasonable basis for its verdict here, in light of the evidence from which the jury could have concluded that she suffered no injury and that the difficulties for which she sought medical treatment were in fact a function of a preexisting condition.

The court is similarly unmoved by Plaintiff's assertion that defense counsel poisoned the damage award by appealing to the jurors' own pecuniary interests during closing. The Seventh Circuit has made clear that closing remarks that appeal to jurors' pecuniary interests as taxpayers are generally improper. *Cf. United States v. Schimmel*, 943 F.2d 802, 806 (7th Cir. 1991). In this case the court permitted defense counsel to make one mention, without emphasis, of the source of a compensatory damage award. The court allowed this one reference because Plaintiff's counsel opened the door to the issue in his own closing remarks when he observed that the jurors' tax dollars are used to pay the Defendant officers' salaries. The court finds that the zero damage award accurately reflects the jury's determination of the value of Plaintiff's injuries and is not persuaded that a single passing reference to the source of a compensatory damage award poisoned the jury's deliberation on that issue.

Finally, Plaintiff argues that defense counsel asked the jury to return a zero damage verdict for unlawful reasons. Specifically, Plaintiff notes defense counsel's statement that "Plaintiff should have to explain why Ms. Golden doesn't follow the laws of Illinois," and urges that this statement was inconsistent with the evidence and misleading. The court disagrees. The facts of the case were highly disputed; defense counsel did not act improperly when he effectively asked the jury to credit Officer Brill's account over Ms. Golden's. Plaintiff's motion for a new trial on damages is denied.

7

**Plaintiff's Motion for Altered Judgment**

Plaintiff alternatively argues that the compensatory damage award should be altered to a nominal award so as to allow a new trial on punitive damages. On this issue, the court will simply note that in cases where a § 1983 violation has been found, the Seventh Circuit has repeatedly permitted juries to award punitive damages despite their having awarded no compensatory damages. *See Calhoun v. DeTella,* 319 F.3d 936, 943 (7th Cir. 2003); *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998); *Sahagian v. Dickey,* 827 F.2d 90, 100 (7th Cir.1987); *McKinley v. Trattles,* 732 F.2d 1320, 1326 (7th Cir.1984). Even where local law does not allow punitive damage awards without at least a nominal damage award, the scope of punitive damages in § 1983 actions is governed by the "federal common law of damages" which imposes uniformity when enforcing the Civil Rights Acts. *Timm*, 137 F.3d 1008, 1010 (citing *Lenard v. Argento,* 699 F.2d 874,897 (7th Cir.1983)).

There is nothing in the record to suggest that the jury failed to comply with the court's instruction or that it failed to consider punitive damages before returning the verdict. Without clear evidence to the contrary, the court will assume that the jury understood and followed its instructions. *Briggs v. Marshall*, 93 F.3d 355, 359 (7th Cir. 1996).

More importantly, the court will not entertain Plaintiff's argument for an altered verdict because Defendant proposed a nominal damages instruction. Plaintiff's counsel objected to any such instruction being given, apparently out of concern that the jury would view the instruction as an invitation to return a verdict in an amount lower than what it might otherwise award. The court sustained that objection.

The court recognizes the apparent incongruity of a verdict for Plaintiff on the one hand and an award of zero damages on the other. "An award of zero damages, supported by a rational basis in the record, is generally considered a judgment for defendant." *PH Group Ltd. v. Birch*, 985 F.2d 649, 652 (1st Cir. 1993), *quoted in Franzen v. Ellis Corp.*, 543 F.3d 420 (7th Cir. 2008). The

Seventh Circuit holds, however, that a plaintiff waives an entitlement to nominal damages by failing "to submit a proposed nominal damages instruction to the district court." *Penn v. Harris*, 296 F.3d 573, 577 (7th Cir. 2002). By the same token, by successfully prevailing on the court to withhold a "nominal damages" instruction, Plaintiff has effectively waived any argument that nominal damages should be awarded.

## **CONCLUSION**

For the reasons discussed above, the court denies Plaintiff's motion for a new trial [112] pursuant to FED. R. CIV. P 59(a) or alternatively for an altered judgment pursuant to FED. R. CIV. P. 59(e) and also denies Defendant's motion for an altered verdict [114] pursuant to FED. R. CIV. P. 59(e).

ENTER:

Dated: September 28, 2009

_____
REBECCA R. PALLMEYER
United States District Judge